JOHN C. VERMILLION ET AL. V. STATE, EX REL. JOHN T. ENGLEHARDT.

FILED JANUARY 5, 1907.    No. 14,340.

1. **Schools**: EXPULSION OF PUPILS. School boards are, by section 11079, Ann. St., authorized to suspend or expel a pupil from the public schools of this state for gross misdemeanors or persistent disobedience, and this without notice to the pupil or his parents and without any formal trial.

2. ———: REINSTATEMENT OF PUPILS. The board may adopt any mode of procedure in obtaining information or evidence of the conduct

of the pupil which it deems best, but in an action brought against its members to procure the reinstatement of the pupil his misconduct can only be shown by witnesses cognizant of the facts.

3. Mandamus: PROCEDURE. If the relator in an action for a writ of mandamus refuses to produce evidence in support of the allegations of his petition on the case being called for trial, the case on motion of the respondent should be dismissed; but the respondent, by assuming the burden and introducing evidence in support of his defense, waives the error and the case must then be determined on the evidence. *Union P. R. Co. v. Mertes,* 35 Neb. 204.

ERROR to the district court for Merrick county: JAMES G. REEDER, JUDGE. *Reversed.*

*W. T. Thompson* and *John C. Martin,* for plaintiffs in error.

*Patterson & Patterson,* contra.

DUFFIE, C.

November 1, 1904, the school board of district No. 9, Merrick county, was notified by Miss Cunningham, the principal, that she had expelled Edith Englehardt from the school for gross misdemeanors and persistent disobedience. The record made by the board relating thereto is to the following effect: "The board met at the school house during the noon hour, all the members being present. After finding that Miss Cunningham had only carried out the instructions of the board authorizing her to expel the pupil, it was moved and seconded that the action of Miss Cunningham in expelling Edith Englehardt be sustained. Motion carried. Board adjourned." The minutes of the board under date of November 7, 1904, contain the following: "The school board met at the school house at 4 P. M. for the purpose of explaining to Mr. Englehardt the charges against Edith. The minutes of the meeting containing the charges were read. The request of the attorney that the case be opened and reconsidered was refused. It was moved and seconded that the action of the board

be final. Motion carried." Thereafter, and on November 16, 1904, John T. Englehardt, the father of the expelled pupil, commenced this action in the district court for Merrick county against the trustees of said district, alleging that said defendants arbitrarily, capriciously, unlawfully, and without any just cause or reasonable excuse, expelled the said Edith Englehardt from said school for the remainder of the present school year, ending about the month of June, 1905, without giving any notice to the said Edith Englehardt or to this plaintiff, her father; that said board, although requested so to do by the plaintiff, refused to reinstate the said Edith Englehardt and allow her to attend said school, as she is lawfully entitled to do, and refused to grant a hearing to said plaintiff and said Edith Englehardt as to why said board expelled her as aforesaid, and denied her the privileges and advantages of said school. It is further alleged in the petition that the plaintiff and his said daughter are not advised in any way concerning the fact or facts, if any exist, on which the action of the school board is based. A writ of mandamus is prayed for.

The case was submitted to the court, who took the same under advisement, and thereafter entered a judgment awarding the writ as prayed in the petition, and taxing the costs to the defendants. From a written opinion filed by the trial judge it is apparent that the judgment entered was based principally upon the fact that no notice was given to the pupil or her parents that the board was to meet and consider the matter of her expulsion. We quote from the opinion: "By section 11079, Ann. St., the school board may authorize or order the suspension or expulsion from the school, whenever in their judgment the interests of the school demand it, of any pupil guilty of gross misdemeanors or persistent disobedience, but such suspension shall not extend beyond the close of the school term. The construction placed on similar statutes by the courts of Michigan, Massachusetts, Indiana and Illinois is that the misdemeanors and disobedience must be wilful

and malicious on the part of the pupil in order to warrant the exercise of the power of expulsion. It is also held in Massachusetts 'that the suspension of a pupil is unlawful' when he has been suspended for alleged misconduct without 'giving the pupil an opportunity to be heard upon the question of fact involved in his alleged misbehavior by the board of directors.' In other words, the board, on whom the authority is conferred by statute, must determine and find from an examination into the case the necessary facts upon which to base their decision. This rule is not complied with by simply ratifying what is done by another. To so hold would permit the substitution of the judgment of the teacher for that of the school board. It is clear from the evidence that in this case the board has not so acted, and peremptory writ will issue as prayed. The application of respondents for a supersedeas will be denied."

The statute under which the board is authorized to expel a pupil does not, in terms, provide for any notice, either to the pupil or to the parents, that a hearing is to be had or action taken. It is probably true that in such proceedings the board acts in a *quasi* judicial manner, but that no trial in the sense of a judicial inquiry is contemplated by the statute is evident. By what process is the attendance of witnesses to be secured, or, if they attend, who is to administer the oath or punish for a refusal to be sworn? What punishment could be inflicted upon those giving false testimony? The proceeding, in our judgment, is more like the action of an administrative board in making inquiry as to existing facts upon which they are required to act. In doing this they may use their own judgment and pursue any course which, in their opinion, will fully inform them of the facts attending the subject matter of the inquiry. In case of the suspension or expulsion of a pupil, the necessities of the case may often require immediate action on the part of the teacher or of the board. To require notice and a formal trial would in many cases defeat the object of the statute. Where the

pupil is guilty of "gross misdemeanors and persistent disobedience," summary action may be required, and this was undoubtedly the view of the legislature in not providing for notice and a formal trial. The authorities are generally to the effect that, where a pupil is guilty of such misconduct as to interfere with the discipline and government of the school, he may be suspended or expelled. *State v. Hamilton,* 42 Mo. App. 24; *McCormick v. Burt,* 95 Ill. 263, 35 Am. Rep. 163; *Peck v. Smith,* 41 Conn. 442; *State v. Williams,* 27 Vt. 755; *State v. Burton,* 45 Wis. 150, 30 Am. Rep. 706; *Watson v. Cambridge,* 157 Mass. 561; *Hodgkins v. Rockport,* 105 Mass. 475; *Sherman v. Inhabitants of Charlestown,* 8 Cush. (Mass.) 163; *Stephenson v. Hall & Van Ornum,* 14 Barb. (N. Y.) 222; *Board of Education v. Helston,* 32· Ill. App. 300; *Scott v. School District,* 46 Vt. 456. In *Board of Education v. Purse,* 101 Ga. 422, 41 L. R. A. 593, pupils were suspended without notice, and, on the report of a committee of the board appointed to investigate the facts the superior court granted a writ of mandamus to reinstate the pupils, but, upon appeal to the supreme court and on an extended examination of the authorities, the order of the superior court was reversed.

We are of opinion, also, that the teacher, when the interest of the school requires it, may suspend or expel a pupil, making, as in this case, a report to the board of such action. Upon this question the supreme court of Wisconsin, in *State v. Burton, supra,* has used the following language: "While the principal or teacher in charge of a public school is subordinate to the school board or board of education of his district or city, and must enforce rules and regulations adopted by it for the government of the school, and execute all its lawful orders in that behalf, yet, in matters concerning which the board has remained silent, he has authority, as *in loco parentis,* to enforce obedience to his lawful commands; subordination, civil deportment, respect for the rights of other pupils, and all obligations inherent in every school system constituting

the common law of the school which every pupil is presumed to know. In a proper case and where not deprived of the power by affirmative action of the board, such teacher has the inherent power to suspend a pupil from the privileges of the school; though such suspension should be promptly reported to the board, with the reason therefor." See, also, *Bourne v. State,* 35 Neb. 1. Our examination of the authorities and the necessities requiring it lead us to believe that the rule is this: That the teacher, when occasion demands, may suspend or expel a pupil; that the board, upon such inquiry as their own judgment may suggest and approve, may, without notice to the pupil or to the parents, suspend or expel a pupil who, in the language of the statute, is guilty of "gross misdemeanors or persistent disobedience," and that the welfare of our common school system requires that they be invested with this authority. While the board is invested with this power, a more satisfactory method of procedure in ordinary cases would probably be to suspend the accused pupil for the present, fix an early day for examining the case, giving all parties interested an opportunity to be heard.

Complaint is made by the plaintiffs in error that the burden was cast upon them to show the legality of their action. When the case was called for trial, the relator refused to produce any evidence in support of the allegations of his petition, and thereupon the respondents moved a dismissal of the case. This motion was overruled, and respondents proceeded with their evidence. In *Jackson v. State,* 57 Neb. 183, it was held that "an action of mandamus will lie and may be maintained to reinstate a pupil in a school, if the action of the officer or officers by which the party was refused admission to or continuance in the school was an arbitrary or capricious exercise of authority." Under this holding certainly something more than a petition alleging arbitrary or capricious conduct in expelling or suspending a pupil is necessary, and the general rule is that the relator has the burden of establishing the allegations of his complaint. Until it was shown that

the respondents in this case acted capriciously, arbitrarily and without sufficient reason for their action, the court ought not to set aside the order made by them.

Complaint is made by the respondents that mandamus is not the proper proceeding to review the action of the board, but that an appeal is their only remedy. We cannot concur in this view. If the board may proceed without notice, and without a formal trial, to expel a pupil, no opportunity is offered to make or preserve a record. Again, an appeal would not afford a speedy and adequate remedy. The privileges of the common school are awarded to every resident of the state of school age. The success of our form of government is largely dependent upon the intelligence of the people, and this is recognized in the facilities provided by law for the education of our people. One who is unjustly deprived of the privileges of the public school is entitled to a speedy and adequate remedy. This has been recognized by this court in several cases, and the right to a mandamus in this class of cases upon a proper showing has never been denied. *State v. School District,* 31 Neb. 552; *Board of Education v. Moses,* 51 Neb. 288. The record before us indicates that the respondents believed that the law invests them with a discretion in the matter of suspending or expelling a pupil, which is not subject to review by the courts, and probably because of this they failed to introduce evidence relating to the conduct of Edith Englehardt or the claimed misbehavior on her part, although the trial court cast on them the burden of justifying their action. It is true that on the cross-examination of respondents' witnesses it was shown that one or more members of the board had received complaints from the teacher that Miss Englehardt was violating the rules of the school, and that they had made inquiries of other pupils regarding her conduct, but no witnesses having personal knowledge of the matter were put upon the stand by the respondents for the purpose of showing any violation of the rules or other misconduct by Miss Engle-

hardt. If the case was one in which the parties to the action alone were interested, we would not hesitate to affirm the judgment of the district court upon the ground that, having accepted the burden cast upon them by the court of justifying their action, they attempted to justify only by showing that complaint had been made of misconduct on the part of Miss Englehardt, that some inquiries had been made, and that her expulsion followed. Of what acts Miss Englehardt had been guilty, and whether such acts constituted a breach of the rules, or could be classed as "gross misdemeanors or persistent disobedience," there is nothing in the record to inform us or the trial court. The case, however, is one in which the welfare of the school and its patrons are involved, the public have an interest in the outcome, and, for this reason, we think another trial should be ordered. As the case will have to be reversed and a new trial ordered, because of the errors above pointed out, a discussion of the taxation of the costs becomes immaterial.

We recommend a reversal of the judgment appealed from and that the cause be remanded for another trial.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for another trial.

REVERSED.