People of State of Illinois ex rel. Patricia Bluett,
Relator-Appellant, v. Board of Trustees of Univer-
sity of Illinois, a Public Corporation, Respondent-
Appellee.

Gen. No. 46,874.

First District, First Division.
May 7, 1956.
Released for publication June 12, 1956.

Tuohy & Quinn, of Chicago, attorneys and counsel,
for relator-appellant.

Ralph F. Lesemann, Legal Counsel, University of
Illinois, of Urbana, Albert E. Jenner, Jr., and Prentice
H. Marshall, both of Chicago, for respondent-appellee;
Johnston, Thompson, Raymond, Mayer & Jenner, of
Chicago, of counsel.

JUDGE NIEMEYER delivered the opinion of the
court.

Relator (hereinafter called plaintiff), a student in
the medical school of the University of Illinois in Chi-
cago from October 1, 1949 to and including May 1953,
appeals from an order striking her amended complaint
and dismissing her action for mandamus to compel
the defendant, The Board of Trustees of the University
of Illinois, to vacate an order of expulsion of plaintiff
entered July 22, 1954 by the Committee on Policy and

Discipline of the Chicago Professional Colleges of the University of Illinois; to reinstate plaintiff as an active student in good standing on the rolls of the medical school and to permit her to take all necessary examinations to determine her right to advance to classes to which she would have been entitled had the order of expulsion not been entered. Plaintiff's appeal to the Supreme Court was transferred to this court.

Plaintiff's action is based on the want of a formal charge and a formal hearing at which she would be confronted with the accusing witnesses and given an opportunity to cross-examine them. Defendant attacks the sufficiency of the amended complaint and the power of the court in a mandamus proceeding to vacate the existing order of expulsion and award the further relief asked by plaintiff. As to the merits, defendant contends that in the procedure adopted and the action taken, plaintiff was not deprived of any legal right.

The material facts alleged will be stated briefly. In May 1953 plaintiff was suspended and prohibited from further continuing her course at the university. She was not informed as to the cause of her suspension until on or about June 15, 1954, when she appeared with her attorney before the Committee on Policy and Discipline and was advised by the counsel for the university that she had been suspended for planning, intending and attempting to turn in an examination paper in an examination in physical diagnosis as her examination paper, which, in fact had been written by a Doctor Wong; that prior thereto, in examinations in a class in obstetrics and a class in pharmacology, she had turned in or caused to be turned in examination papers as her own which in fact had also been written by Doctor Wong. No witnesses were produced at the meeting to support the charges and no other evidence was heard than the testimony of plaintiff, not under oath, denying the charges. The committee on July 15, 1954, "After having given careful and

thorough consideration to all the evidence before it pertaining to the charges of cheating, or attempting to cheat, in examinations in pharmacology, obstetrics, and physical diagnosis against Miss Patricia Bluett (plaintiff), including her own testimony," as stated in the certificate of the secretary of the committee sent to plaintiff, unanimously found her guilty with respect to each of the charges and changed her status as a student under suspension to that of one expelled and dismissed from the College of Medicine, and recommended to the Dean of the college that she be accorded failing grades in her courses of pharmacology, obstetrics and physical diagnosis. Plaintiff petitioned the committee to reconsider its action, but the committee, after hearing the attorney for plaintiff, reaffirmed its previous decision expelling plaintiff from the university and thereafter failed, refused and neglected to reinstate plaintiff, although she continually made demands upon the committee for reinstatement.

Plaintiff denies her guilt of the charges of cheating or attempting to cheat in examinations, and further alleges that the charges were not sworn to and the only knowledge plaintiff had concerning them was the oral statement of the attorney for the university, hereinbefore mentioned, and that "the Committee in the presence of this Relator heard no evidence of any nature, either sworn or not sworn, which would tend in any manner to substantiate in any degree the charges as related by the attorney for the university," and that the committee "denied her an opportunity of facing her accusers and denied her the right of cross-examining anyone who made any charge against her."

Plaintiff concedes the right of the committee to expel a student for cheating or attempting to cheat in examinations, and that the court should not attempt to control the exercise of that power unless it is substantially abused. People ex rel. Latimer v. Board of Education of City of Chicago, 394 Ill. 228. No authorities are

cited in plaintiff's original brief to support her contention of a right to sworn charges and an open hearing in which she is confronted with witnesses and given the right of cross-examination. In the reply brief plaintiff's counsel quote from 11 Corpus Juris, Colleges and Universities, page 998, and from Anthony v. Syracuse University, 130 Misc. 249, 223 N. Y. Supp. 796, page 807, to the effect that a college cannot dismiss a student except on a hearing in accordance with a lawful form of procedure, giving him notice of the charge and an opportunity to hear the testimony against him, to question witnesses and to rebut the evidence. The positive statement taken from 11 Corpus Juris is not repeated in 14 Corpus Juris Secundum, Colleges and Universities, in treating of the same subject, and the case of Anthony v. Syracuse University was reversed on appeal (224 App. Div. 487, 231 N. Y. Supp. 435). Moreover, both authorities are discussed and rejected in State ex rel. Ingersoll v. Clapp, 81 Mont. 200, where the court said (p. 215):

"Upon a consideration of the foregoing authorities we are impelled to the conclusion that to hold to the rule laid down in Commonwealth ex rel. Hill v. Mc-Cauley (3 Pa. Co. Ct. Rep. 77), and seemingly approved in Anthony v. Syracuse University, would lead to a wholly impractical and unworkable situation. As above pointed out, the president of the university has no authority to compel the attendance of witnesses at a hearing or to compel them to testify if they were present. To hold that the power of suspension could only be exercised after a hearing had been held such as is indicated in the cases last referred to, would be to hold that the power was practically ineffective, except where witnesses voluntarily attended and testified."

The only Illinois case directly in point brought to our attention is Smith v. Board of Education of Oak Park and River Forest Tp. High School, 182 Ill. App.

342, where a student was expelled for violating a rule forbidding membership in a high school fraternity. The expulsion was made without a formal hearing. In reversing the action of the trial court in ordering the return of the expelled student to school, the Appellate Court said (p. 346):

"In order to carry out the powers and duties of school directors or Board of Education of high school districts, no form of trial or hearing is prescribed. The powers are given, the duties are laid down and the Board of Education is authorized in a reasonable and parliamentary way to investigate charges of disobedience or misconduct, and to suspend or expel any whom they may find guilty of any violation of any of their reasonable and valid rules."

To the same effect are Vermillion v. State ex rel. Englehardt, 78 Neb. 107; State ex rel. Sherman v. Hyman, 180 Tenn. 99; Tanton v. McKenney, 226 Mich. 245.

The order appealed from is affirmed.

Affirmed.

FRIEND, P. J. and BURKE, J., concur.