[Civ. No. 2684. First Appellate District, Division One.—March 25, 1919.]

EILY S. M. GROSJEAN, Appellant, v. BOARD OF EDUCATION OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

[1] SCHOOL LAW — RULES OF BOARD OF EDUCATION — SUSPENSION OR NONOBSERVANCE—WHO MAY COMPLAIN.—A rule adopted by a board of education prescribing the procedure by which its rules may be amended or repealed is merely a rule of parliamentary procedure adopted for the guidance, and it may be the protection, of the members of the board, which they have power to suspend or ignore when occasion requires, and in respect to their action in so doing, no one but the members of the board have a right to complain.

[2] ID.—SUSPENSION BY UNANIMOUS ACTION.—Such a rule is effectually suspended by the board through its unanimous action in passing an amendment without the formality prescribed therein.

[3] ID.—AMENDMENT OF RULES—NOTICE TO TEACHERS.—A teacher may not be heard to complain that she was not legally notified of a

change in the rules, in that the principal failed to paste in her copy of the rules a copy of the change or amendment as required by the rules of the board, where she was personally made acquainted with the changed rule through having read the same.

[4] ID.—SAN FRANCISCO CHARTER—DUTIES AND RELATIONS OF SUPERINTENDENT OF SCHOOLS—GENERAL LAW OF STATE.—The charter of the city and county of San Francisco, in assigning to the superintendent of schools, who is made by the charter an *ex-officio* member of the board of education, the specific duty of presenting charges against teachers for violations of the rules of the board, is to be regarded as a state law of equal dignity with the general laws of the state so long as it is not in conflict with them.

[5] ID.—BIAS OR PREJUDICE OF SUPERINTENDENT OF SCHOOLS—DUTY TO PRESENT CHARGES.—Since the charter expressly imposes upon the superintendent of schools the duty of presenting such charges, any bias or prejudice which he might have will not affect his right and duty to prepare and present the charges.

[6] ID.—HEARING OF CHARGES—DISQUALIFICATION OF SUPERINTENDENT OF SCHOOLS.—A teacher who has been dismissed cannot raise the objection, in a proceeding in *mandamus* to secure her reinstatement, that the superintendent of schools by reason of bias or prejudice, was disqualified to sit as a member of the board in the hearing and determination of charges which he had himself in the character of a prosecutor laid before that body, where her petition affirmatively shows that such superintendent of schools, while *ex officio* a member of the board, did not in fact sit or act as a member of the board in the final determination thereon.

[7] ID.—QUASI-JUDICIAL TRIBUNALS—RULES AS TO DISQUALIFICATION. In relation to the acts of such inferior and only *quasi*-judicial tribunals as boards of education, boards of supervisors, town councils, and other governing bodies of public subdivisions or municipal corporations, the rules relating to the disqualification of regular judicial tribunals or officers have but a limited application.

[8] ID.—DISQUALIFICATION FOR BIAS OR PREJUDICE—PRESENTATION OF OBJECTION.—An objection that the board of education is disqualified by reason of bias or prejudice to hear and determine the charges presented by the superintendent of schools must be presented at the inception of the hearing and must be supported by affidavits.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   Geo. E. Crothers, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. W. Eastin for Appellant.

George Lull, City Attorney, and Milton Marks, Assistant City Attorney, for Respondents.

RICHARDS, J.—This is an appeal from a judgment in the defendants' favor after an order sustaining their demurrer to the sufficiency of the plaintiff's application for a writ of mandate.

The plaintiff, prior to May 12, 1917, had been a teacher in the public schools of San Francisco for many years, holding diplomas and certificates which entitled her to be a teacher therein and to be retained in such position unless dismissed therefrom for "insubordination, immoral or unprofessional conduct," after the presentation of charges and a hearing thereon as provided by law. It appears affirmatively from the plaintiff's petition that such charges were presented and a hearing had thereon before the said board of education, which thereupon made an order for the plaintiff's dismissal. It is the regularity and legality of this action on the part of said board which the plaintiff attacked by her petition and which she assails upon this appeal.

It sufficiently appears upon the face of the plaintiff's petition that the alleged dereliction of duty which furnished the basis of the charges which were preferred against her was that of insubordination, consisting first in violations of the rules of the board of education, by repeated absences from her place in the particular school to which she had been assigned, and, second, in insubordination, by failing or refusing to report at the office of the superintendent of schools when required to do so in order to explain such absences. The charges presented against the plaintiff to the board of education by the superintendent of schools on April 30, 1917, specifically asserted that the plaintiff had been absent from her duties without permission for seventeen school days out of a possible twenty during four weeks in the months of March and April, 1917, the dates of such absences being March 13th, 14th, 15th, and 16th, after which a vacation intervened from March 26th to April 9th; then followed absences on April 9th, 10th, 11th, 12th, 13th, 17th, 18th, 19th, 20th, 24th, 25th, 26th, and 27th. Prior to April 10, 1917, section 86 of the rules of the board of education read as follows: "Teachers desiring to be absent

from duty for more than one calendar week must give notice thereof to the board, stating the cause and duration of such absence. Such notification, made upon official blanks, and approved by the principal, must be sent to the board. In cases of sudden illness, or other emergency, teachers may absent themselves temporarily without permission for a term not to exceed five days."

On April 10th the board of education adopted the following resolution purporting to change this particular rule:

"Whereas regularity in attendance is a prime duty of the teacher; therefore be it

"Resolved, That section 86 of the rules be and it is hereby abolished and the following substituted therefor:

" 'In case of serious sickness or death in the family and of illness grave enough to keep a teacher at home or in a hospital, teachers may absent themselves without permission for a term not to exceed five days. Where teachers wish to absent themselves for other reasons they must notify the Board, stating the cause and duration of such absence, and obtain permission therefor, to be certified to them by the secretary of the Board of Education.' "

[1] It is the contention of the appellant that the foregoing change in said rule 86 of the board was not legally made, and hence ineffectual, for the reason that its adoption was in alleged violation of section 12 of the rules of the board, which provides as follows:

"Sec. 12. Any rules adopted by the Board may be amended or repealed by the affirmative vote of three members at any meeting, provided notice in writing of such intended amendment or repeal has been given at a previous meeting."

We perceive no merit in this contention. The section above quoted is merely a rule of parliamentary procedure adopted for the guidance, and it may be protection of the members of the board, and which they had power to suspend or ignore when occasion required, and in respect to their action in so doing, no one but the members of the board themselves would have a right to complain. (*Hutcheson* v. *Storrie* (Tex. Civ.), 48 S. W. 785; *Greeley* v. *Hamman,* 17 Colo. 30, [28 Pac. 460]; Cooley's Constitutional Limitations, 7th ed., p. 113; *Heiskell* v. *Mayor etc. of Baltimore,* 65 Md. 125, [57 Am. Rep. 311, 4 Atl. 116].)

[2]   Besides we think the rule referred to was effectually suspended by the board of education through its unanimous action in passing the amendment to rule 86 without the formality of the notice in writing of its proposed enactment required by section 12.   (*People* v. *Common Council of Rochester,* 5 Lans. (N. Y.) 11; *Nelson* v. *City of Omaha,* 84 Neb. 434, [121 N. W. 453].)

[3]   It is next contended by the appellant that she was not legally notified of the change thus made in rule 86 of the board and was therefore not bound by it.   This contention is predicated upon section 47 of the said rules, which reads as follows:

"Sec. 47.   Principals, when officially notified of any changes or amendments to these rules, shall immediately cause them to be neatly inserted in the copy of the rules belonging to each teacher in their respective schools."

While it is conceded by the respondent that the record does not affirmatively show that this requirement was complied with, it is pointed out that the plaintiff nowhere alleges that she was not personally made acquainted with the fact and substance of the change in the rule within a day or two after such change was made.   On the contrary, the plaintiff sets forth in her petition the full text of the charges made against her, wherein it appears that her principal directed her attention to the new rule regarding absences of teachers shortly after its passage, and that she then read it.   This statement the plaintiff nowhere denies; and since the rule imposing upon principals the duty of pasting copies of changes made in the teachers' books of rules has for its only purpose the giving to such teachers notice of the text of changes thus made, this purpose was fully subserved by the plaintiff's reading of the rule.

[4]   This brings us to a consideration of the charges which were presented against the plaintiff, and the procedure thereon, to which the plaintiff and appellant offers several more or less specific objections.   The charges were presented by the superintendent of schools acting under the express authority and duty conferred upon him by the terms of the city charter, which in chapters I to VI of article VII thereof provides a system of government of the public schools of San Francisco in amplification of the provisions of the Political Code.   We perceive no valid objection to the assignment of

this specific duty to the superintendent of schools, who is made by the charter an *ex-officio* member of the board of education. The charter in creating these duties and relations is to be regarded as a state law of equal dignity with the general laws of the state so long as in school matters it is not in conflict with them. (*Stern* v. *City Council etc.*, 25 Cal. App. 685, [145 Pac. 167].)

Turning now to the substance of the charges themselves, we find that the plaintiff was therein charged with having been absent from her duties four days in the middle of March, 1917, without excuse; that she was again absent during all of the school days of the week commencing April 9, 1917; and was again absent during all of the school days of the following week excepting Monday, if school was held on that day; and was again absent on all of the school days of the succeeding week, again excepting Monday, all of which absences were without permission or excuse. It would be a very strained construction of rule 86 of the board of education as it read prior to April 10, 1917, which would permit teachers without the excuse of illness or other emergency to absent themselves from their place and duty for three successive weeks with the exception of two separate intervening days, without being liable to the charge of dereliction of duty; even, therefore, if rule 86 had not been validly amended on April 10, 1917, as the plaintiff charges, these unexplained absences would have been a violation of both the letter and spirit of the original rule. The change in the rule effected by its valid amendment on the latter date puts the matter, however, beyond dispute, since the amendment requires that teachers wishing to absent themselves from their places for any other reasons than serious sickness or death in their families, or illness of themselves grave enough to keep them at home or in the hospital, must notify the board of education of the cause and duration of such absences, and obtain permission therefor. Under this amended rule the plaintiff by her absences after April 10, 1917, or at least after the rule as changed had been read by her within a brief time thereafter, had subjected herself to the charges which were preferred against her. These charges further specify that on April 18, 1917, the board of education by letter of that date directed the principal of her school to notify the plaintiff to report to the office of the superintendent of schools, but owing to her absence, this notice was not con-

veyed to her until April 23d, which was one of the Mondays when she was at school. She did not so report nor attempt to do so until after the close of school hours on that day, when she did attempt to report, but failed to find the superintendent in his office. On the following Monday she called the superintendent on the telephone, when he told her that he had prepared charges against her. On that day she again absented herself without permission for the remainder of the week.

The foregoing facts form the basis of the charges which the superintendent presented to the board on April 30, 1917. Upon their presentation the board suspended the plaintiff, and fixed the date of hearing thereon for May 12, 1917, of which the plaintiff had due notice. She appeared before the board on that day and pleaded not guilty to the charges, but apparently offered no objection to the right of the superintendent to present, or of the board to hear, such charges upon any of the grounds of bias, prejudice, or interest which she now urges against the legality of the proceeding. Upon the hearing upon said charges, and after the taking of evidence *pro* and *con* thereon without objection on the plaintiff's part, the board made its findings sustaining said charges and dismissing her from her position as a teacher in the public schools. The plaintiff appealed to the superintendent of schools within the time and in the manner provided by the school laws, which appeal was denied by the superintendent on June 4, 1917. To the charges thus presented, the hearing thus held, the findings and order thus made, and the appeal thus taken and determined, the plaintiff presented certain objections in her petition, and has reiterated these upon this appeal.

[5] The chief of these objections, aside from those already noted and disposed of, relate to the alleged disqualification of the superintendent to present, and of the members of the board of education to hear and determine, said charges by reason of the asserted bias and prejudice of these officials. As to the alleged disqualification of the superintendent of schools to present charges, there is no merit in the plaintiff's claim, since the charter expressly imposes the duty of presenting such charges upon that particular official, and any bias or prejudice which he might have could not affect his right and duty to prepare and present the charges in question. The more serious part of the objection is that relating to the alleged disqualification of the board of education to act in the hearing

and determination thereon. **[6]** The first part of this objection embraces the asserted disqualification of the superintendent of schools to sit or act as a member of the board in the hearing and determination of charges which he has himself in the character of a prosecutor laid before that body. Such an objection might in a proper case prove effectual, but not in the case at bar, since the plaintiff's petition affirmatively shows that the superintendent of schools, while *ex officio* a member of the board, did not in fact sit or act as a member of the board in the final determination thereon. **[7]** But aside from this we think the authorities quite consistently hold that in relation to the acts of such inferior and only *quasi*-judicial tribunals as boards of education, boards of supervisors, town councils, and other governing bodies of public subdivisions or municipal corporations, the rules relating to the disqualification of regular judicial tribunals or officers have but a limited application. In the recent case of *Federal Construction Co.* v. *Curd,* 179 Cal. 489, [2 A. L. R. 1202, 177 Pac. 469], this subject was quite fully discussed in a case not distinguishable in principle from the case at bar, and in which the court declared it to be the settled rule "that the interest of one or all of the members of boards of trustees, city councils, or other municipal bodies charged with the making or rectifying of assessments for street or other improvements, may have, arising from the fact of their ownership of property directly affected by the proposed improvement, does not create such a disqualification to sit or act in the premises as to render their action void as not constituting due process of law." Other cases bearing upon the same subject and applying the same rule to officials sitting upon the hearing of charges against municipal officers are the following: *Riggins* v. *Richards,* 97 Tex. 229, [77 S. W. 946] ; *State* v. *Common Council,* 90 Wis. 612, [64 N. W. 304] ; 2 McQuillin on Municipal Corporations, sec. 565.

**[8]** Aside, however, from these considerations, the plaintiff's petition discloses that the plaintiff's objection to the action of the board of education or any of its members in proceeding to try her upon the charges presented by the superintendent of schools upon the ground of their or any of their disqualification by reason of bias or prejudice was made for the first time after the trial, decision, and order for her dismissal, and in her appeal to the superintendent for a re-

versal of such decision and order, and that her objection then taken was merely the general one "that the said findings, decision, and order were the result of passion and prejudice on the part of said board of education." Such an objection came entirely too late, even had the same been valid, since it is a general rule of law applicable to the alleged disqualification of judicial officers, that the objection upon that ground must be presented at the inception of the hearing and must be supported by affidavits. This rule and the reasoning which supports it also applies to the appeal taken by the plaintiff to the superintendent of schools, against whom she makes for the first time in her petition a similar charge, but to whom she committed her cause upon appeal without objection as to his personal qualification to hear and act upon the same. Our conclusion upon this branch of the case is that the board of education and the members thereof were not disqualified to hear, entertain, and determine the charges presented against the plaintiff, or to enter the order for her dismissal from the school department based thereon.

We do not deem it necessary to discuss the other points presented by the appellant upon this appeal.

Judgment affirmed.

Waste, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 22, 1919.

All the Justices concurred.